IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT FERGUSON,                                    Case No. 3:15-CV-01532-SU

       Plaintiff,

    v.                                         **FINDINGS AND**
                                                   **RECOMMENDATION**
CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

SULLIVAN, Magistrate Judge:

Robert Ferguson ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income ("SSI") Title XVI of the Act. For the reasons set forth below, the Commissioner's decision should be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed his application for SSI on March 10, 2010, alleging disability as of August 5, 2007. Tr. 242-43, 265. Plaintiff's claim was denied initially and upon

reconsideration, and he requested a hearing before an administrative law judge ("ALJ").  Tr. 201.

A hearing was held on March 28, 2012 before ALJ Riley Atkins.  Tr. 48-82.  On April 9, 2012,

the ALJ issued a decision finding plaintiff not disabled.  Tr. 120-32.  The Appeals Council

("AC") granted plaintiff's subsequent request for review on June 7, 2013, and remanded the

matter to the ALJ for a new hearing.  Tr. 137-41.  A second hearing was held on January 8, 2014,

after which the ALJ issued a decision finding plaintiff not disabled on February 3, 2014.  Tr. 6-

20, 26-47.  The Appeals Council denied plaintiff's subsequent request for review, making the

ALJ's second decision the final Agency decision.  Tr. 1-4.  This appeal followed.

## FACTUAL BACKGROUND

Born in July, 1955, plaintiff was 54 years old on his application date.  Tr. 242.  He

speaks English and completed the 11th grade.  Tr. 271.  Plaintiff has past work experience as a

janitor, a maintenance man, an agricultural laborer, and a freelance painter.  Tr. 272, 280-81,

610.  Plaintiff alleges disability due to depression, anxiety, social phobia, neurological stroke,

and Hepatitis C.  Tr. 54, 270.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record.  *Hammock v.*

*Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.

It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

*N.L.R.B.*, 305 U.S. 197, 229 (1938)).  The court must weigh "both the evidence that supports and

detracts from the [Commissioner's] conclusions."  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th

Cir. 1986).  "Where the evidence as a whole can support either a grant or a denial, [the court]

may not substitute [its] judgment for the ALJ's."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th

Page 2 – FINDINGS AND RECOMMENDATION

Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the

claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity after March 10, 2010, plaintiff's application date. Tr. 11. At step two, the ALJ determined that plaintiff had the following severe impairments: hepatitis C, status post cerebral trauma; alcohol abuse in claimed remission; social anxiety disorder; and depressive disorder. Tr. 12. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 14.

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: he can perform unskilled-low semi-skilled (SVP 1 through 4) type work that require no more than occasional or infrequent public contact, and would work best alone and not as part of a team. Tr. 15. At step four, the ALJ found that plaintiff could perform his past relevant work as a janitor "as performed" by plaintiff at a light exertion level. Tr. 19. Accordingly, the ALJ found that plaintiff was not disabled as of the date of his application. Tr. 20.

## DISCUSSION

Plaintiff alleges that the Commissioner erred by (1) improperly evaluating the medical evidence, and (2) improperly rejecting his subjective symptom testimony. For the reasons discussed below, the ALJ's decision was supported by substantial evidence and should be affirmed.

I.    Medical Opinion Evidence

Plaintiff first argues that the ALJ erroneously rejected portions of the medical opinions of consultative psychologist Daniel Scharf, Ph.D and consultative psychologist Karla Rae Causeya, Psy.D.  Plaintiff also argues that the ALJ did not consider the opinions of state agency consulting physicians Joshua Boyd, Psy.D. and Paul Rethinger, Ph.D. and treating nurse Madeleine Sanford, FNP.  There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31).  However, if a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons.  *Id.*  In either instance, the ALJ is not required to accept an opinion that is brief, conclusory, or not supported by clinical findings.  *Id.*  (citation omitted).

### 1.  Consultative Psychologist Daniel Scharf, Ph.D.

Dr. Scharf performed a consultative psychodiagnostic examination on June 3, 2010, a few months after plaintiff filed for SSI.  Tr. 455-60.  He noted that plaintiff "reported mild difficulties with depression" that were "sporadic" and that once or twice a week he did not want to be around other people.  Tr. 456.  Dr. Scharf assessed a GAF score of 52, and opined that plaintiff could "understand or remember short and simple instructions although [he] may have more difficulties with complex instruction."  Tr. 457-58.  He opined that plaintiff was "able to sustain concentration and attention although [he] would have difficulties with persistence," and was "able to engage in appropriate social interaction."  Tr. 458.

Plaintiff argues that the ALJ improperly rejected Dr. Scharf's opinion because the  ALJ failed to limit plaintiff to unskilled work and failed to include any limitation in persistence in the RFC.  The court disagrees.  The ALJ gave significant weight to Dr. Scharf's opinion and

Page 5 – FINDINGS AND RECOMMENDATION

reasonably interpreted that opinion in light of plaintiff's past work experience as a janitor.  The ALJ incorporated Dr. Scharf's opinion into the RFC by limiting plaintiff to unskilled to low semi-skilled work, requiring no more than occasional or infrequent public contact, and specifying that he would work best alone and not as part of a team.  Tr. 15, 17.  The ALJ also noted plaintiff's difficulties with persistence and determined plaintiff was able to sustain concentration and attention for only two hours before needing a break.  Tr. 17.  He credited Dr. Scharf's opinion that plaintiff could understand, remember, and carry out short and simple instructions although he "may" have some difficulty with complex instructions.  Tr. 17, 456-57.  On this record, the ALJ reasonably interpreted Dr. Scharf's opinion and incorporated his assessment of plaintiff's limitations into the RFC.  Because the ALJ's interpretation of Dr. Scharf's opinion was rational, his evaluation of the medical evidence should be affirmed.

### 2. Consultative Psychologist Karla Rae Causeya, Psy.D.

Dr. Causeya performed a psychodiagnostic evaluation and assessed plaintiff's ability to work on October 23, 2013.  Tr. 609-17.  She diagnosed  alcohol use disorder, moderate, in early remission.  Tr. 615.  Dr. Causeya's diagnostic impression also included that plaintiff reported a history of social phobia but that it was no longer a problem.  *Id.*  Objective memory testing showed performance in the low average range.  She opined that plaintiff "may" require accommodations such as lists of instructions to remember information, and would likely have difficulty accepting criticism from supervisors.  Tr. 616.

The ALJ gave great weight to Dr. Causeya's opinion, noting that the mental status testing suggested that plaintiff retained the ability to perform semi-skilled work.  Tr. 16, 18-19, 613-15, 616.  Consistent with Dr. Causeya's opinion, the ALJ limited plaintiff to no more than semi-skilled work with restrictions on interpersonal contact.  Tr. 15, 17, 19.  He also noted that

plaintiff's difficulties shifting attention in tasks requiring executive functioning would likely be found in skilled rather than unskilled or semi-skilled employment.  Tr. 16, 616.

Plaintiff argues that the ALJ failed to incorporate Dr. Causeya's opinion into the RFC because he did articulate a limitation on plaintiff's contact with supervisors.  While Dr. Causeya stated that plaintiff would likely have difficulty accepting criticism from supervisors, it was reasonable for the ALJ to interpret this limitation by limiting plaintiff's interpersonal contact. Thus, although plaintiff presents an alternative interpretation of Dr. Causeya's opinion – as requiring a limitation on all contact with supervisors – the ALJ's interpretation of Dr. Causeya's opinion as limiting plaintiff to no more than semi-skilled work with little interpersonal contact was rational and should be affirmed.  *See Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004).

### 3.  State Agency Consultants Joshua Boyd, Psy.D., and Paul Rethinger, Ph.D.

Drs. Boyd and Rethinger reviewed plaintiff's medical records initially in June 2010, and on reconsideration in October 2010, respectively.  Tr. 85-91, 100-04.  Both physicians opined that plaintiff could consistently maintain concentration, persistence, and pace for two- to three-step tasks for normal two-hour work periods, and could occasionally carry out more detailed tasks.  Tr. 90, 104.  They found that plaintiff could plan and follow work place routines and schedules and maintain adequate attendance.  *Id.*

Plaintiff argues that the ALJ erred because he did not explicitly address the opinions of Drs. Boyd and Rethinger in his written decision.  An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012) (internal citations omitted).  Here, plaintiff has not identified harmful error because the ALJ incorporated the state agency consultants' opinions into the RFC.  The RFC says that "..claimant has the residual functional capacity to perform light work …except the

Page 7 – FINDINGS AND RECOMMENDATION

claimant is limited to unskilled-low semi-skilled type work…." Tr. 15. The ALJ based his nondisability determination on the VE's testimony that plaintiff could perform his past work as a janitor in the way he had performed it, at a light level. Tr. 76-77.   While plaintiff argues that Drs. Boyd and Rethinger assessed limitations consistent with occupations having a "GED Reasoning level no greater than 2" (Docket No. 23, at 4), he has not shown that their opinions rule out the ability to perform light work as proved for in the RFC.  The ALJ's conclusion is consistent with the state agency physicians' opinions, and the ALJ's failure to discuss these opinions in his written decision was therefore harmless error.  *Molina*, 674 F.3d at 1115.

### 4.  Madeleine Sanford, FNP

Ms. Sanford completed a Mental RFC questionnaire regarding plaintiff's mental limitations in March, 2012.  Tr. 600-03.  She opined that plaintiff would be markedly limited in his ability to perform regular activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  Tr. 600.  Ms. Sanford also opined that plaintiff would likely be absent about 4 times each month due to his psychological symptoms.  Tr. 602.

Social Security Rule ("SSR") 06-03p defines "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists.  SSR 06-03p.  Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work."  20 C.F.R. § 416.913(d). Because Ms. Sanford is a nurse practitioner, she is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment.  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006).  To reject the competent

Page 8 – FINDINGS AND RECOMMENDATION

testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).  In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Id*. at 1114.  The ALJ also may "draw inferences logically flowing from the evidence."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ considered Ms. Sanford's opinion and assigned it "little weight."  Tr. 18.  Because Ms. Sanford is an "other" medical source under the Regulations, the ALJ was required to provide "germane" reasons for rejecting her opinion.  *Molina*, 674 F.3d at 1111.  The ALJ may discount evidence if it conflicts with the claimant's activities of daily living or the opinion of another medical provider.  *Morgan v. Comm'r*, 169 F.3d 595, 601-02 (9th Cir. 1999).  Here, the ALJ found that Ms. Sanford's opinion conflicted with the medical evidence in the record, including Dr. Causeya's opinion, which did not include diagnoses of depression or anxiety.  Tr. 18, 609-17.  The ALJ also found that Ms. Sanford's assessment of severe social and mental limitations was inconsistent with plaintiff's volunteer activities and his regular visits to a bookstore "to be around people."  Tr. 18, 613.  On this record, the ALJ provided legally sufficient, germane reasons for rejecting Ms. Sanford's opinion, and his findings should be affirmed.[1]  *Morgan*, 169 F.3d at 601-02.

## II.    Plaintiff's Testimony

---

[1] While plaintiff provides a reasonable alternative interpretation of the evidence of his daily activities, the ALJ's rational decision should be affirmed.  *Batson*, 359 F.3d at 1196.

Plaintiff next argues that the ALJ improperly rejected his subjective symptom testimony. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 416.927. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. *Morgan*, 169 F.3d at 599.

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at 599.

At the 2012 hearing, plaintiff testified that he last worked as a janitor in 2007 and had to stop because it became too difficult for him to deal with people. Tr. 53. He had difficulty

Page 10 – FINDINGS AND RECOMMENDATION

keeping up with the job because of anxiety and fatigue.  Tr. 58-59.  Plaintiff testified that he has difficulty working because he can "become overwhelmed with … anxiety and can't speak," that this results in a low energy level, and that he avoids going out because he is anxious around people.  Tr. 56-57, 59.  Plaintiff also suffers from Hepatitis C and neck pain, which makes it difficult for him to turn his head.  Tr. 62.

At the remand hearing in 2014, plaintiff reported that he had been hospitalized for depression and anxiety in December, 2013, and had received counseling for severe anxiety for the past 6 months.  Tr. 31-33.  He stated that his conditions prevent him from leaving his apartment for a few days each week.  Tr. 37.  Plaintiff testified that he still suffered from neck pain due to three fused vertebrae in his neck, and continued to experience fatigue due to Hepatitis C.  Tr. 39-40.  He could not afford the newest treatment for Hepatitis C.  Tr. 41.

The ALJ rejected plaintiff's testimony as to the nature and severity of his limitations for several reasons.  Tr. 13-16.  First, the ALJ found that plaintiff's statements about his concentration and memory were contradicted by the objective medical evidence.  Inconsistencies between the severity of a claimant's alleged symptoms and the medical evidence is a proper basis for rejecting the claimant's testimony.  *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the ALJ may discount a claimant's statements that conflict with the medical evidence in the record).  Here, Dr. Scharf's psychological examination findings suggested that plaintiff retained the ability to concentrate and that his memory was intact.  Tr. 457-58.  This evidence conflicts with plaintiff's allegations of disabling mental limitations, and therefore constitutes a clear and convincing reason for rejecting his testimony regarding those limitations.  *Light*, 119 F.3d at 792.

Second, the ALJ found that plaintiff's symptoms improved with treatment, and were not therefore not disabling.  Tr. 16.  The effectiveness of treatment is a relevant factor in evaluating

whether a claimant's limitations are disabling.  20 C.F.R. 416.929(c)(3).  The ALJ may also consider medical reports of improvement in evaluating a claimant's statements.  *Morgan*, 169 F.3d at 599-600.  Here, the ALJ noted that plaintiff had suffered cerebral trauma from a bike accident in 2009, but that his neurologist expected his mental symptoms to be posttraumatic.  Tr. 16, 405-06, 408.  The ALJ also noted that at the hearing, plaintiff testified to "very minimal mental functional limitations," which the ALJ concluded was "probably because he has not really had any significant mental functioning limitations despite the bike accident."  Tr. 16. Finally, the ALJ noted that plaintiff's social anxiety had largely improved with treatment, that plaintiff received minimal treatment for his conditions, and that plaintiff acknowledged that medications and counseling improved his condition.  Tr. 13, 16-18, 456 (treatment note acknowledging that medication and counseling are "helpful"), 613 (treatment note indicating that plaintiff is "now able to talk to people that he works with in various volunteer settings"), 615 (treatment note in which plaintiff reported that symptoms of social phobia were "no longer a problem"), 657-58 (indicating normal psychiatric presentation).  On this record, it was reasonable for the ALJ to reject plaintiff's testimony that he was completely disabled due to anxiety and social phobia.  *Morgan*, 169 F.3d at 599-600.

Third, the ALJ found that plaintiff's statements were inconsistent with his activities of daily living.  Tr. 15-16.  A claimant's daily activities are an appropriate consideration in evaluating a claimant's testimony.  *Tommasetti*, 533 F.3d at 1039.  For example, while plaintiff testified to disabling fatigue and exhaustion, the record shows that he was able to volunteer regularly for significant amounts of time, was interested in making friends, interacted socially with co-workers, and made regular visits to a bookstore in order to be around other people.  Tr. 15-16, 17, 18, 613.  While plaintiff's daily activities do not constitute substantial gainful activity, they do contradict his testimony regarding his physical and social limitations.  The ALJ was

Page 12 – FINDINGS AND RECOMMENDATION

therefore entitled to reject plaintiff's statements of extreme mental and social limitations because they conflicted with his daily activities. *Tommasetti*, 533 F.3d at 1039. In sum, the ALJ provided legally sufficient for rejecting plaintiff's testimony, and his decision should be affirmed.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due October 21st, 2016. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 4th day of October, 2016.


    /s/   Patricia Sullivan

                    Patricia Sullivan
                    United States Magistrate Judge