IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT FERGUSON,                                      No.  3:15-cv-01532-SU

                    Plaintiff,

          v.

CAROLYN W. COLVIN, Acting                             OPINION & ORDER
Commissioner of Social Security,

                    Defendant.

HERNANDEZ, District Judge:

      Magistrate Judge Sullivan issued a Findings & Recommendation (#24) on October 4,

2016, in which she recommends the Court affirm the Commissioner's decision to deny

Supplemental Security Income.  Plaintiff has timely filed objections to the Findings &

Recommendation.  The matter is now before me pursuant to 28 U.S.C. § 636(b)(1) and Federal

Rule of Civil Procedure 72(b).

      When any party objects to any portion of the Magistrate Judge's Findings &

Recommendation, the district court must make a *de novo* determination of that portion of the

1 - OPINION & ORDER

Magistrate Judge's report.  28 U.S.C. § 636(b)(1); <u>Dawson v. Marshall</u>, 561 F.3d 930, 932 (9th

Cir. 2009); <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

I have carefully considered all of Plaintiff's objections and conclude that the Magistrate

Judge erred in finding that the ALJ's RFC appropriately included the limitations assessed by Dr.

Scharf, Dr. Causeya, and the state agency consultants.  As to Plaintiff's other objections, I

conclude there is no basis to modify the Findings & Recommendation.  I have also reviewed the

pertinent portions of the record *de novo* and find no other errors in the Magistrate Judge's

Findings & Recommendation.

In seeking review of the Commissioner's decision, Plaintiff argued that the ALJ

improperly assessed the medical evidence.  Specifically, Plaintiff challenged the ALJ's failure to

credit limitations given by examining psychologists Daniel Scharf, Ph.D. and Karla Rae Causeya,

Psy.D, as well as by Family Nurse Practitioner (FNP) Madeleine Sanford.  Plaintiff also took

issue with the ALJ's failure to comment at all on the opinions rendered by state agency reviewing

practitioners Joshua Boyd, Psy.D. and Paul Rethinger, Ph.D.

In the Findings & Recommendation, Judge Sullivan concluded that the ALJ did not err

regarding the limitations provided by Dr. Scharf and Dr. Causeya.  Judge Sullivan explained that

the ALJ had given significant weight to the opinions of both practitioners and that the ALJ's RFC

fairly incorporated their limitations.  Findings & Rec. at 5-6.  As to FNP Sanford, Judge Sullivan

found that the ALJ did not err in assigning her opinions "little weight" because he gave legally

sufficient, germane reasons in support of his determination.  <u>Id.</u> at 9.  Finally, as to the state

agency reviewing practitioners, Defendant conceded that the ALJ omitted any discussion of their

opinions.  But, Defendant argued, and Judge Sullivan agreed, any error was harmless because the

2 - OPINION & ORDER

ALJ's RFC incorporated their opinions.  Id. at 7-8.  While I agree with Judge Sullivan's finding

regarding FNP Sanford, I do not adopt her findings as to the examining psychologists or the non-

examining state agency practitioners.

I.   Dr. Scharf

      Dr. Scharf examined Plaintiff in June 2010.  Tr. 455-60.  The examination consisted of a

diagnostic interview, mental status examination, and a review of records.  Tr. 455.  During the

mental status examination, Plaintiff was able to track the conversation and answer questions.  Tr.

457.  He was oriented to person, place, time, and purpose.  Id.  His thoughts were logical and

goal-directed.  Id.  Plaintiff correctly solved basic math operations in addition, subtraction,

multiplication, and division.  Id.  However, his attention was moderately disrupted.  Id.

      Dr. Scharf diagnosed Plaintiff as having social anxiety disorder, post-traumatic stress

disorder, and depressive disorder NOS.  Id.  In the section discussing his diagnostic impressions,

Dr. Scharf remarked that Plaintiff showed anxiety during the examination, although he was able

to participate adequately.  Id.  Dr. Scharf stated that Plaintiff did not show memory problems or

cognitive problems.  Id.  He was able to follow basic instructions.  Id.  However, Dr. Scharf

opined that Plaintiff was limited to understanding and remembering "short and simple

instructions" and "may have more difficulties with complex instruction."  Tr. 457-58.  Dr. Scharf

also opined that while Plaintiff was able to sustain concentration and attention, he would have

difficulties with persistence.  Tr. 458.

      The ALJ gave "significant weight" to Dr. Scharf's opinions as "his observations and

medical opinion are consistent with and supported by the medical evidence of record."  Tr. 17.

As a result, the ALJ stated, "accommodations for the limitations noted by Dr. Scharf are

incorporated" into the RFC.  Id.

As Plaintiff argues, however, the RFC included no express limitation to "short and simple instructions" or to a restriction expressly addressing persistence.  Instead, the ALJ found that Plaintiff had the capacity to perform "light work as defined in 20 C.F.R. § 416.967(b) except [he] is limited to unskilled-low semi-skilled (SVP 1 through 4) type work that requires no more than occasional or infrequent public contact.  He would work best alone and not as part of a team." Tr. 15.

Judge Sullivan concluded that the ALJ did not err in omitting the "short and simple instructions" and persistence restrictions because the ALJ "incorporated Dr. Scharf's opinion into the RFC by limiting plaintiff to unskilled to low semi-skilled work, requiring no more than occasional or infrequent public contact, and specifying he would work best alone and not as part of a team."  Findings & Rec. at 6.  Judge Sullivan noted that the ALJ commented on Dr. Scharf's finding that Plaintiff was able to sustain concentration and attention but would have some difficulty with persistence.  Id.  She then concluded that

> [the ALJ] credited Dr. Scharf's opinion that plaintiff could understand, remember, and carry out short and simple instructions although he "may" have some difficulty with complex instructions.  On this record, the ALJ reasonably interpreted Dr. Scharf's opinion and incorporated his assessment of plaintiff's limitations into the RFC.  Because the ALJ's interpretation of Dr. Scharf's opinion was rational, his evaluation of the medical evidence should be affirmed.

Id.

The only reasoning in support of this conclusion is that the ALJ's limitation to unskilled to low semi-skilled work, which the ALJ defined as "SVP 1-4," and the limitations to infrequent public contact and working alone, account for Dr. Scharf's limitation of short and simple

instructions and his limitation regarding persistence.  I disagree that the ALJ's RFC sufficiently incorporates Dr. Scharf's limitations.

The first problem is the ALJ's failure to include anything other than an SVP limitation to address the mental function restrictions found by Dr. Scharf which the ALJ purportedly accepted. As defined in the Dictionary of Occupational Titles (DOT), the "significant vocational preparation" or "SVP" ratings address the amount of time it takes to acquire the skills needed for a job.  DOT, App. C, § 2, 1991 WL 688702 (4th ed. 1991) (defining SVP as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.").  "The higher the SVP rating, the more time it takes to equal average performance in that occupation." Nava v. Colvin, No. 3:14-cv-01348-AA, 2015 WL 5854074, at *5 (D. Or. Oct. 6, 2015).

The SVP level is not, however, synonymous with the simplicity of a task.  See Smith v. Colvin, No. 3:14-cv-01210-PA, 2016 WL 680535, at *11 (D. Or. Feb. 19, 2016) (finding that the "ALJ conflated two separate vocational considerations in formulating the RFC and in his hypothetical to the VE:  the SVP level and the simplicity or complexity of the task"); Soto-Rojas v. Comm'r, No. CIV. 09-6218-KI, 2011 WL 39141, at *7 (D. Or. Jan. 6, 2011) ("The SVP level in a DOT listing indicating unskilled work does not address whether a job entails only simple tasks").  The ALJ's restriction to SVP 1-4 level jobs does not, without more, incorporate a limitation to understanding and remembering only short and simple instructions or a limitation of "difficulties with persistence."  See Nava, 2015 WL 5854074, at *6 ("SVP ratings of 1-4 . . . do not assess a claimant's non-exertional limitations" such as those in concentration, persistence, or pace).  Additionally, the ALJ's restrictions on working alone or little public contact also have

nothing to do with Dr. Scharf's persistence or "short and simple instructions" limitations.

Second, the Social Security Administration correlates jobs with SVP 3-4 ratings to semi-skilled work and jobs with SVP 1-2 ratings to unskilled work. Soc. Sec. Ruling (SSR) 00-4 ("unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4"), available at 2000 WL 1898704, at *3. Regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). Semi-skilled work is defined as "work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 416.968(b). Based on the definitions, SVP 3-4 jobs are semi-skilled and require an ability to understand more than simple instructions, while SVP 1-2 unskilled jobs can be performed by a person with a limitation to "simple" and "short" instructions.

At the hearing, the ALJ presented a hypothetical to the vocational expert (VE) which included the limitations to unskilled to low semi-skilled work. Tr. 78. The ALJ did not include a limitation to short and simple instructions or a limitation in persistence. Thus, the VE did not testify that a person with persistence or "short and simple instruction" limitations could perform semi-skilled work or Plaintiff's past relevant work of janitor. The VE testimony responded only to the hypothetical which, like the RFC, omitted Dr. Scharf's limitations. To the extent the ALJ's RFC included SVP 3-4 semi-skilled jobs, it failed to incorporate Dr. Scharf's limitation regarding Plaintiff's ability to understand and remember only short and simple instructions. See Kaltenegger v. Colvin, 5:14-cv-65-BO, 2015 WL 354171, at *2 (E.D. N. Car. Jan. 27, 2015) (ALJ who found Plaintiff limited to simple, routine, repetitive work erred by concluding claimant could perform semi-skilled past relevant work with SVP of 3); Hooks v. Astrue, No. CA

6 - OPINION & ORDER

11-00243-C, 2012 WL 1207163, at *4 (S.D. Ala. Apr. 11, 2012) (ALJ's conclusion that claimant could perform past work which was SVP 3 and had a Level Three General Educational Development reasoning level inconsistent with RFC limiting claimant to "simple, 1-2 step instructions"); Cook v. Astrue, No. 3:11-cv-696-J-TEM, 2012 WL 4356261, at *7 (M.D. Fla. Sept. 24, 2012) (noting that although the vocational expert testified that a limitation to simple, routine, repetitive tasks would generally lead to unskilled work, expert's express testimony, based on his knowledge, training, experience, and expertise, that the claimant could perform certain semi-skilled jobs even though the hypothetical included a limitation to simple, routine, repetitive tasks, provided substantial evidence for the ALJ's conclusion).

The ALJ's error in this regard is not harmless.  The VE testified Plaintiff's past relevant work of janitor, DOT number 382.684-010, was semi-skilled and SVP 3.  Tr. 75-76.  Relying on that testimony, the ALJ completed his disability determination at step four when he concluded that Plaintiff could perform his past janitor job.  Tr. 19, 78.  For the reasons explained, absent specific VE testimony about a particular job, the semi-skilled SVP 3 category of jobs is inconsistent with a restriction to "short and simple instructions" and a limitation on persistence.

Additionally, the janitor position has a General Educational Development (GED) reasoning level of three.  DOT, 382.684-010, available at 1991 WL 673265.  As Judge Panner noted in Smith, "[c]ourts in this district have previously recognized that a job's simplicity level is better addressed by its GED (reasoning level) ratings, rather than by its SVP rating."  Smith, 2016 WL 680535, at *11.  GED levels are "aspects of education (formal and informal) . . . required of the work for satisfactory job performance."  DOT, App. C, § 3, 1991 WL 688702. GED levels include the reasoning ability required to perform the job and range from Level One

to Level Six.  See id.  Level Three reasoning is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  Id. According to the Ninth Circuit, Level Three reasoning is "at odds" with a limitation to simple, routine tasks.  Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015) (holding "that there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 reasoning").  The VE was not asked to explain how Plaintiff, who was restricted by Dr. Scharf to understanding and remembering only "short and simple instructions" and limited in persistence, could perform a job with a Level Three GED reasoning requirement.

The ALJ's RFC did not fully account for the limitations assessed by Dr. Scharf which the ALJ purportedly adopted.  The error was not harmless.  I do not adopt Judge Sullivan's finding on this issue.

## II.  Dr. Causeya

Dr. Causeya examined Plaintiff in October 2013.  Tr. 609-17.  She performed several tests and conducted a personal interview as well as a mental status examination.  Id.  Plaintiff was fully oriented and had adequate judgment but his affect was restricted and his mood was somewhat anxious.  Tr. 612.  After several subtests, he appeared to break down and was in tears. Id.  After some encouragement from Dr. Causeya, Plaintiff was able to continue with the remaining testing without further problem.  Id.  Test results indicated Plaintiff had difficulty "refocusing and shifting his attention."  Tr. 613.  His working memory score on the WAIS-IV indicated a "relative weakness in his ability to temporarily hold information in short term memory, perform a mental manipulation on it, and produce a result."  Tr. 614.  He had other low

average and borderline memory testing results.  Tr. 615.

Based on her evaluation, Dr. Causeya opined that it was possible Plaintiff would have difficulty dealing with the public or accepting criticism from a supervisor.  Tr. 616.  She stated that he is somewhat slower than average in his ability to make mental calculations in a timely manner.  Id.  He also had difficulty with cognitive flexibility, and thus, may have difficulty refocusing and shifting his attention in tasks requiring executive functioning.  Id.  Also, his test scores indicated he may have difficulty remembering information and may require "more rehearsal of information to be committed to memory than the average person."  Id.  Dr. Causeya offered that Plaintiff would benefit from having lists and resources available to him to utilize should he have difficulty remembering information required to perform in the work environment. Id.

The ALJ discussed Dr. Causeya's opinion and gave it "great weight."  Tr. 19.  He explained that her opinion was consistent with the RFC's limitation to semi-skilled work with restricted interactivity.  Id.  He also found it consistent with Plaintiff's volunteer activities, certain of Plaintiff's statements, and his work search with the Office of Vocational Services.  Id.

Plaintiff argued that despite the ALJ stating that he was giving "great weight" to Dr. Causeya's opinion, he failed to include any limitation on interactions with supervisors and failed to include any accommodations of written lists of instructions that she suggested would be beneficial.  Judge Sullivan concluded that the ALJ did not err because the ALJ reasonably interpreted Dr. Causeya's limitation regarding supervisors as a limitation on interpersonal contact.  Findings & Rec. at 6-7.  Judge Sullivan did not address the omission from the RFC of any limitations regarding written instructions.

9 - OPINION & ORDER

I disagree with Judge Sullivan.  In a 2015 Opinion, I rejected the same argument about the omission of a supervisor limitation.  <u>Dennis v. Colvin</u>, No. 6:14-cv-00882-HZ, 2015 WL 3867506 (D. Or. June 20, 2015).  There, the ALJ gave "great weight" to the opinion of an examining psychologist which included limitations on the abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism by supervisors, and to work in close proximity to others.  <u>Id.</u> at *4.  The plaintiff argued that notwithstanding the ALJ's crediting of the opinion, the ALJ omitted several of the limitations from the RFC.  <u>Id.</u> That RFC included, as is relevant here, (1) working in an environment with no public interaction, although she could pass someone in a hall; (2) a job that required no teamwork although she could work in proximity with others; and (3) only occasional interaction with coworkers where they do not work closely.  <u>Id.</u> at *2.  It did not include a limitation expressly related to supervisors.

The defendant contended that the RFC's limitation to exclude jobs requiring teamwork sufficiently accounted for the limitation in dealing with supervisors.  <u>Id.</u> at *7.  I rejected that argument, citing to and discussing cases holding that limitations on public contact do not relate to limitations on contact with coworkers and supervisors and other cases holding that a limitation on contact with coworkers does not relate to a limit on supervisors.  <u>Id.</u> at **7-8.  I concluded that

> [w]hen the ALJ credits the opinion of a medical source which includes the limitation on the ability to interact appropriately with supervisor, the omission of this specific, concrete limitation in the RFC is error because it is a limitation not requiring "capturing" or "translation" and limitations on interactions with the public or coworkers do not address the separate dynamic created by the supervisory relationship.

Id.

Dr. Causeya gave an express limitation on the ability to accept criticism from a supervisor. The ALJ's RFC contained limitations on public contact and teamwork. It did not address the limitation on supervisors. For the reasons explained in Dennis, this was error. And, as Dennis explained, the omission of a supervisor restriction is not a "small error" which may be considered harmless given the "unique relationship of a supervisor to an employee[.]" Id. at *9.

III. State Agency Reviewing Practitioners.

Dr. Boyd and Dr. Rethinger reviewed Plaintiff's records in June 2010 and on reconsideration in October 2010. Tr. 83-92, 94-106. Both practitioners opined that Plaintiff could understand and consistently remember two- to three-step instructions, and could occasionally recall more detailed or complex instructions. Tr. 90, 103. They also opined that Plaintiff was not limited in the ability to carry out very short and simple instructions but was moderately limited in the ability to carry out detailed instructions as well as in the ability to maintain attention and concentration for extended periods. Id. They stated that he could consistently maintain concentration, persistence, and pace for two- to three-step tasks for normal two-hour work periods, and could occasionally carry out more detailed tasks. Tr. 90, 104. They also found that Plaintiff could plan and follow workplace routines and schedules and maintain adequate attendance. Id.

There is no question that the ALJ failed to discuss these opinions. Def.'s Brief at 13, ECF 20. Defendant argued that the error was harmless because the ALJ's RFC was limited to unskilled to low semi-skilled work or SVP 1 through 4, and Plaintiff's prior janitor work was SVP 3. Judge Sullivan agreed with Defendant, concluding that the ALJ incorporated the state

agency consultants' opinions into the RFC.  Findings & Rec. at 7.  She explained:  "While plaintiff argues that Drs. Boyd and Rethinger assessed limitations consistent with occupations having a GED Reasoning level no greater than 2, he has not shown that their opinions rule out the ability to perform light work" as provided for in the RFC.  Id. at 8.

A limitation to light work addresses *physical* restrictions.  The limitations assessed by Drs. Boyd and Rethinger address *mental* limitations.  A limitation to light work cannot incorporate completely independent mental function limitations.

The limitations assessed by the state agency consultants to short, simple, two- to three-step tasks with the ability to only occasionally remember more detailed or complex instructions is inconsistent with the janitor job with a Level Three GED reasoning level.  As noted above, Level Three reasoning jobs require the claimant to "[a]pply a commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702, § 3.  In contrast, Level One jobs require the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Id.  Level Two jobs require the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Id.

When the Level Three requirement is read in conjunction with the Level One and Level Two requirements, it is clear that the limitations from the state agency consultants are inconsistent with Level Three.  Level One and Level Two encompass limitations to one- to two-

step instructions or to "detailed but uninvolved" instructions.  Level Three, however, requires the ability to "[d]eal with problems involving several concrete variables[.]"  While the state agency consultants did provide that Plaintiff could perform jobs with two- to three-step instructions, they also qualified that with a limitation of "short and simple."  While allowing for the occasional performance of a more detailed or complex task, their limitations are not consistent with jobs which regularly present "problems involving several" variables.

Other cases have reached similar conclusions.  See, e.g., Brown-Mueller v. Colvin, No. 13-cv-00537-PAB, 2015 WL 1433275, at *3 (D. Colo. Mar. 25, 2015) (ALJ's RFC limitation to "simple, 3- to 4-step instructions" was inconsistent with the demands of Level Three reasoning); Smith v. Astrue, No. 506-cv-373-OC-10GRJ, 2008 WL 879380, at *8 (M.D. Fla. Mar. 28, 2008) (RFC which limited Plaintiff to simple, low stress work with one-, two-, or three-step instructions, and the ability to understand, remember, and carry out simple instructions was inconsistent with past relevant work with Level Three reasoning requirement).

SSR 00–4p states that the Agency relies "primarily on the DOT . . . for information about the requirements of work in the national economy. We use these publications at Steps 4 and 5 of the sequential evaluation process."  SSR 00–4p, 2000 WL 1898704, at *2.  The occupational evidence provided by a VE should generally be consistent with the occupational information supplied by the DOT, although neither one automatically "trumps" when there is a conflict.  Id. The ALJ is required to ask the VE on the record if the evidence the VE has provided conflicts with the DOT.  Id. at *2, *4. When there is an "apparent unresolved conflict" between the VE evidence and the DOT, the ALJ has a duty to elicit a reasonable explanation for the conflict before relying on the VE's evidence.  Id.; see also Massachi v. Astrue, 486 F.3d 1149, 1153 (9th

Cir. 2007).

Here, the ALJ asked the VE if his testimony was consistent with the DOT.  Tr. 79.
However, given the apparent conflict between the state agency consultants' limitations and the
Level Three reasoning required by the past janitor position the ALJ found Plaintiff was able to
perform, the ALJ was required to elicit an explanation for the conflict before relying on the VE's
evidence.  This the ALJ did not do and thus, his error in failing to discuss the state agency
consultants' opinions was not harmless.

IV.  Remand

Remand for additional proceedings is appropriate in this case.  Even if the limitations that
the RFC failed to expressly incorporate were presented in a valid hypothetical to the VE, the
record does not firmly establish that the limitations would preclude Plaintiff from performing his
past relevant work as a janitor.  While they appear to be inconsistent with that job, the VE must
be given the opportunity to explain any inconsistency. Thus, I remand for additional proceedings.

CONCLUSION

The Court ADOPTS in part and DOES NOT ADOPT in part Magistrate Judge Sullivan's
Findings & Recommendation [24], and therefore, the Commissioner's decision is reversed and
remanded for additional proceedings.

IT IS SO ORDERED.

DATED this _____28_____ day of _____Nov_____, 2016.


_____Marco Hernandez_____
MARCO A. HERNANDEZ
United States District Judge

14 - OPINION & ORDER